TEXTO COMPLETO DE LA RESOLUCION
Omar Camacho Castillo (en adelante, el recurrente), presentó un recurso el 29 de julio de 2002, mediante el cual nos solicita la revisión de la resolución de la Junta de Derechos de las Víctimas de la Administración de Corrección (en adelante, la Junta), emitida el 26 de junio de 2002 y notificada el 28 de junio de 2002.
A continuación exponemos brevemente el trasfondo fáctico y procesal del caso.
I
El 15 de junio de 2002, la Junta celebró una vista para considerar la posible concesión del privilegio de Programa de Hogares de Adaptación Social al recurrente. A dicha vista acudió el recurrente, acompañado por un abogado, así como un familiar de la víctima del delito cometido por el recurrente. Véase a la página 32 del apéndice de la apelación.
Según surge de la resolución recurrida, el recurrente fue evaluado por un técnico de servicios sociopenales, quien posteriormente lo refirió para evaluación de la Junta para la consideración del privilegio. El recurrente, al momento de la vista, se encontraba clasificado en custodia mínima y su sentencia extinguirá, tentativamente, el 6 de abril de 2005. Id.
Luego de celebrada la vista, la Junta emitió una resolución mediante la cual resolvió denegar el privilegio del Programa de Adaptación Social al recurrente. La Junta expresó que en esos momentos el recurrente no se encontraba preparado para el beneficio de ese programa de desvío, debido a que existía un alto riesgo de fricción con la parte perjudicada, por la proximidad entre el hogar propuesto y la residencia de los perjudicados; y la existencia de una orden de retención {“detainer”) y extradición a Cuba emitida por el Gobierno Federal. La resolución explicó que al no existir un pacto de reciprocidad entre Puerto Rico y Cuba, la Administración de Corrección se veía imposibilitada de supervisar al confinado si éste era deportado.
Inconforme con la determinación de la Junta, el recurrente acude ante nos y señala los siguientes errores:

“Erró la Administración de Corrección al violar el debido proceso de ley sustantivo al recurrente al 
*607
denegarle su participación en los Hogares de Adaptación Social al no aplicar sus propias normas, al no aplicar la Orden Administrativa Núm. AC-2001-15, no seguir las directrices emitida (sic) por el Servicio de Inmigración y naturalización y por aplicar erróneamente (sic) el derecho aplicables (sic) a las personas procedentes de Cuba, lo que convierte la determinación de la Junta en contraria a derecho.

Erró la Administración de Corrección al violar el debido proceso de ley sustantivo del recurrente al denegarle su participación en los Hogares de Adaptación Social al emitir un determinación que no se sustenta en el expediente social del recurrente, no empece el buen ajuste realizado por el compareciente y el plan de salida presentado. ”

II
En su escrito, el recurrente argumenta con respecto al primer error, que la Junta actuó en contra de sus propios procedimientos al no tomar en consideración la Orden Administrativa AC-2001-15, que establece el hecho de que “el que se haya emitido un ‘detainer’ contra un confinado(a) por el Servicio de Inmigración y Naturalización de los Estados Unidos de América, no constituirá un impedimento para que éste califique para un programa de desvío.” Véase a la página 32 del apéndice del escrito de revisión.
Indica, además, en cuanto a lo anterior, que la Junta incidió al no tomar en consideración la carta de 5 de octubre de 1995, de la Sra. Myma O. Pérez, entonces Directora del Servicio de Inmigración y Naturalización (en adelante, el SIN), en la cual se informó a la Administración de Corrección que el propósito del “detainer” es proveer una notificación adecuada con respecto a que cuando el confinado haya agotado su sentencia, pasa a la custodia del SIN. Véase a las páginas 3, 15 del escrito de revisión. 
Sostiene el recurrente que la Administración de Corrección no puede denegar a un confinado participación en un programa como el de Hogar de Adaptación Social, basado en la existencia de una orden de detención.
El Art. 27 de la Ley Núm. 116 de 22 de julio de 1974, según enmendado por el Art. 3 de la Ley Núm. 49 de 26 de mayo de 1995, 4 L.P.R.A. see. 1201, instruyó al Administrador de Corrección a establecer Hogares de Adaptación Social. Estas son instituciones de vigilancia mínima a donde se trasladan a ciertos confinados con miras a “facilitar su retorno a la libre comunidad”. Id.
Tomando en consideración el informe presentencia, si lo hubiese, el historial social, el diagnóstico psicológico, el informe sobre entrevistas sociales, evidencia de buena conducta así como cualquier otra prueba pertinente, el Administrador de Corrección podría ordenar el traslado del confinado a uno de dichos Hogares. 4 L.P.R.A. see. 1202.
Para cumplir con su deber en ese sentido, el Administrador debía adoptar un reglamento para regir lo concerniente con la administración de los Hogares de Adaptación Social; establecer el procedimiento de transferencia de los confinados al igual que su reingreso a cualquier institución del sistema correccional; y regular todo otro aspecto relacionado con tales programas de rehabilitación. 4 L.P.R.A. see. 1206. Estas disposiciones relativas a la creación de los Hogares de Adaptación Social claramente otorgan al Administrador de Corrección -o al funcionario designado por éste-, una amplia discreción al evaluar la posibilidad de trasladar un confinado a uno de dichos hogares.
Entre los criterios adoptados por el reglamento promulgado referente al traslado de confinados a los Hogares de Adaptación Social, entre otros, se encuentran: 1) que al momento de su posible traslado esté clasificado en custodia mínima; 2) poseer una actitud positiva hacia el Programa y la disposición para adaptarse a sus normas; 3) que un análisis de su historial social evidencie el potencial de rehabilitación del candidato y que su traslado es recomendable para facilitar su reintegración a la libre comunidad.
*608 Las personas que son trasladadas a un Hogar de Adaptación Social, a su vez, son elegibles para recibir permisos para salir de la institución, siempre y cuando acepten cumplir ciertas condiciones. 4 L.P.R.A. see. 1136. Estos permisos no constituyen un derecho del convicto. Constituyen una medida de tratamiento que se concede discrecionalmente por el Administrador de Corrección cuando se estima que ello será útil al proceso rehabilitador. De ahí, que el permiso puede ser revocado si se determina que no está surtiendo el efecto rehabilitador deseado o cuando la seguridad del convicto o la comunidad estén en riesgo. Id.
Existen diversos tipos de permisos de salida de la institución. Uno de éstos lo constituyen los llamados pases extendidos. Estos son definidos como “el permiso que se le concede a un residente de un Hogar de Adaptación Social para residir en el hogar propuesto mientras cumpla las condiciones impuestas y hasta que se le conceda la libertad bajo palabra o extinga su sentencia, lo que ocurra primero Pueblo v. Báez Ramos, 99 J.T.S. 159, 244, Opinión de 11 de octubre de 1999. Debe advertirse que, en circunstancias normales y siempre y cuando el convicto cumpla con la reglamentación aplicable, este tipo de permiso es de naturaleza permanente, sin fecha fija de reingreso a la institución. Su vigencia, conforme a su naturaleza, expira cuando se le concede al convicto libertad bajo palabra, o cuando extingue su sentencia. Id.
Previo a entrar al programa de pases extendidos, el convicto es orientado en tomo a sus deberes. Con ese fin, se le provee un documento, que debe firmar, que contiene de forma específica todas sus responsabilidades. Entre ellas se encuentra su deber de comparecer puntualmente al Hogar de Adaptación Social que le brinda servicios, siempre que se le cite. Asimismo, en el documento se le advierte a la persona que, de violar las condiciones impuestas, se iniciará un procedimiento para revocarle el beneficio y que estará “sujetja] a que se radiquen cargos por el Artículo 232 del Código Penal de PR pasada]s] 48 horas de la fecha de [sus] citas de supervisión [,] si no [se] reporta”. Id. 
Es importante destacar que cuando un confinado se encuentra bajo pase extendido, beneficiándose del Programa de Hogares de Adaptación Social, éste no se considera, jurídicamente hablando, como que está recluido. Según se expresó en Báez Ramos, supra:
“con la egresión de los imputados de la institución penal y la concesión de un pase extendido o permanente, ces[a] su reclusión. La concesión del pase extendido, si bien conlleva la imposición de condiciones que limitan la libertad, no hace del hogar de la persona que participa del programa una institución adecuada bajo el concepto "pena de reclusión". El propio Memorando Normativo de la Administración de Corrección, OIAP 92-06, que regula este programa, reconoce que su finalidad es "establece[r] el movimiento de residentes en los Hogares de Adaptación Social hacia la libre comunidad". En tal caso, el propósito del programa de pases extendidos no es la reclusión en sí, sino la más pronta reintegración del convicto a la libre comunidad. De este modo, bajo este esquema, el hogar de los beneficiarios del programa de pases extendidos no es una extensión de la prisión o de una institución de rehabilitación. Sigue siendo parte de la libre comunidad a la cual se pretende reintegrar al convicto. ” Id. a la página 246.
Lo anterior es importante, debido a que la Administración de Corrección debe tomar en consideración el “status” que un confinado tenga ante el SIN, al evaluar si extiende el beneficio de traslado a un Hogar de Adaptación Social. Ello es así, dado que las leyes federales de inmigración aplican a Puerto Rico igual que a cualquier Estado de los Estados Unidos. 8 U.S.C.A. secs. 1101 (36), (38). En ese sentido, las autoridades estatales están bajo la obligación de dar cumplimiento a toda orden de detención emitida por el SIN, notificar a las autoridades federales cuando el confinado sea excarcelado y entregar a dichas autoridades la custodia del detenido.
Cuando un inmigrante ilegal se encuentra cumpliendo una sentencia de cárcel, las autoridades pertinentes no pueden deportarlo mientras está recluido. No obstante, la concesión de libertad bajo palabra, libertad supervisada o probatoria no constituyen obstáculo para su deportación. 8 U.S.C.A. sec. 1231(a)(4)(A). 
*609 En el caso de autos, la Junta no denegó la solicitud del recurrente al programa en cuestión por la mera existencia de la orden de detención. La Junta estimó que siendo los programas de Hogares de Adaptación Social un privilegio de libertad supervisada, el recurrente estaba expuesto a ser removido de la jurisdicción del Estado Libre Asociado de Puerto Rico por el SIN. En ese sentido, los propósitos de la libertad supervisada podrían quedar frustrados, pues la Administración de Corrección no podría evaluar la conducta del recurrente estando éste en otra jurisdicción.
Los autos ante nos no reflejan cómo, de ser deportado el recurrente, puede la Junta realizar la función de supervisar su plan de rehabilitación ni la forma en que se puede identificar su conducta en la libre comunidad cuando ésta refleje que no está aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo supervisión.
Independientemente de que la orden de deportación, por sí sola, no debe ser óbice para la concesión del privilegio solicitado, lo cierto es que la decisión en este caso se sustenta, entre otras cosas, en factores válidos tales como el elemento de no poder supervisar al liberado debido al “status” del recurrente ante las autoridades de inmigración que conllevaría su remoción de la jurisdicción del Estado Libre Asociado.
III
De la resolución recurrida surge, además, que la Junta determinó no conceder el beneficio de Hogar de Adaptación Social al recurrente por dos razones adicionales. Apreció la Junta, con respecto a la relación del recurrente con las víctimas del delito cometido por éste, que existía un alto riesgo de fricción entre el recurrente y los familiares de la víctima. Además, determinaron que el lugar de residencia de estos últimos era muy cercano al hogar propuesto por el recurrente.
Con respecto a esas determinaciones, el recurrente alega que las mismas no se sostienen debido a que del plan de salida propuesto surge que él estaría trabajando en Río Piedras, en un lugar supervisado por oficiales de custodia y trabajando en la Corporación de Empresas de Adiestramiento y Trabajo, ubicadas dentro del Complejo Correccional de Río Piedras. Añade que solamente saldría del área metropolitana si se le concediesen pases para visitar a su amigo consejero en el pueblo de Caguas. Véase a la página 16 del escrito de revisión.
Indica el recurrente, también, que aunque haya que dar consideración al sentir de las víctimas de delitos, ello no puede tener mayor peso que la opinión del personal que ha trabajado con el confinado durante años.
En el recurso se alude a la existencia en el récord de un plan de salida sometido por el recurrente y a la existencia de la opinión del personal sociopenal que lo evaluó. Esa evidencia, que necesariamente fue considerada por la Junta, no fue incluida por el recurrente en el apéndice de su recurso ante nos, por lo que éste no ha cumplido con su obligación de ponemos en posición de poder evaluar sus aseveraciones. Los autos están carentes de prueba que lo acredite.
Conforme a nuestro ordenamiento jurídico, la función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos es una de carácter limitado. En ese sentido, las actuaciones de estos cuerpos merecen gran deferencia de los tribunales si están sostenidas por evidencia sustancial que conste en el expediente administrativo. Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2175; Vecinos del Hospital San Jorge v. United Medical Corp., 2000 J.T.S. 21, 560-561, Opinión de 19 de enero de 2000.
Es por ello que las conclusiones que realiza una agencia tienen a su favor una presunción de legalidad y corrección, la cual debe ser respetada mientras la parte recurrente no presente suficiente prueba para derrotarlas. Misión Industrial de Puerto Rico v. Junta de Planificación y A.A.A., 146 D.P.R. 64, 129 (1998).
*610 El criterio bajo el cual un tribunal debe revisar las determinaciones e interpretaciones de una agencia administrativa es el criterio de razonabilidad, debiéndose sostener las mismas, siempre que la agencia no haya actuado de manera arbitraria, ilegal o en abuso de su discreción. Id. a la página 134.
Como se mencionó, la norma de derecho establece que las determinaciones de hechos de una agencia administrativa deben de ser sostenidas por un tribunal revisor, siempre que las mismas estén basadas en evidencia sustancial que obre en el expediente administrativo. Id. a la página 131.
A tenor con lo anterior, corresponde a quien impugna las actuaciones de estos organismos el deber de probar que se ha actuado en forma arbitraria o caprichosa. Henríquez v. C.E.S., 120 D.P.R. 194, 210 (1987). En ese sentido, la jurisprudencia reiteradamente ha señalado que para que un tribunal pueda concluir que no hay evidencia para sostener una determinación administrativa, la parte afectada debe demostrar que existe otra prueba en el expediente administrativo que razonablemente menoscabe aquélla que la agencia tomó en consideración. Quiere decir, que el peso de demostrar que la decisión administrativa no está justificada por la prueba, corresponde al que así lo alega. Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995).
En Ramírez Rivera v. Departamento de Salud Mental Contra la Adicción, 99 J.T.S. 47, 847, Opinión de 26 marzo de 1999, el Tribunal Supremo expresó que:
“ll]a parte afectada por una determinación de hecho de una agencia debe, en primer lugar, ‘demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. ’ ” (Citas omitidas.)
Concluyó el Tribunal que si “la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de una agencia deben de ser sostenidas por el tribunal revisor. ” Id. Esto se debe a que, como ya habíamos explicado, las resoluciones administrativas gozan de una presunción de corrección y legalidad. Murphy Bemabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Es por eso que a la parte que recurre de la decisión administrativa, le está impedido impugnar las determinaciones de hechos con meras alegaciones. Ramírez Rivera, supra, a la página 817.
Los recurrentes no han demostrado que exista otra prueba en el récord que razonablemente menoscabe la determinación de la Junta. En fin, ante las circunstancias de este caso no puede decirse que la Junta abusó de su discreción ni incurrió en actuación errónea alguna con su determinación de denegar al recurrente el beneficio de libertad supervisada mediante el ingreso a un hogar de adaptación social. En concordancia con lo anterior, resolvemos que no se cometieron los errores señalados.
IV
A tenor con lo anterior, se deniega la expedición del auto de revisión solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 3
1. Mediante una orden de retención (“detainer”), el Servicio de Inmigración y Naturalización de los Estados Unidos (S.I.N.) le notifica a una agencia gubernamental su intención de obtener la custodia de un extranjero que está bajo la custodia de esa agencia, con el fin de arrestarlo y deportarlo. 8 C.F.R. sec. 287.7(a).
*611 2. El recurrente no incluyó dicha carta en el apéndice de su recurso de revisión.
3. Las condiciones impuestas a una persona que entra al programa de pases extendidos son las siguientes:

“a. [S]ometerse a pruebas de orina, sangre, aliento y cualquier otra, con el propósito de detectar el uso de sustancias controladas y alcohol.

b. [Ijntegrarse al Programa de Supervisión Electrónica cuando la situación lo amerite, de satisfacer los criterios de eligibilidad del mismo.

c. [Ajutorizar por escrito a la Administración de Corrección a llevar a conocimiento de aquellos funcionarios del lugar donde se encuentre trabajando, estudiando o recibiendo tratamiento, de su "status" legal. Así también, autoriza a estos funcionarios para que ofrezcan información a la Administración de Corrección sobre todo lo relacionado a sus ajustes.

d. Mientras se encuentre fuera del hogar llevará consigo la tarjeta de identificación que se le proveyó al momento de concedérsele el permiso de salida.

e. No se detendrá en negocios donde se consumen bebidas alcohólicas, no visitará sitios reconocidos como centros de prostitución o de juegos prohibidos, ni frecuentará cualquier otro lugar donde el ambiente sea contrario a los propósitos para los cuales se concedió el permiso.

f. Evitará situaciones que puedan surgir y que en alguna forma afecten los sentimientos de pesar y/o rencor de las personas perjudicadas o relacionadas con el acto delictivo cometido, la seguridad de los vecinos de la comunidad a visitarse o la ciudadanía en general, así como su proceso de resocialización.

g. No usará drogas narcóticas, barbitúricos o sustancias estimulantes sin prescripción médica. De usarlos por prescripción médica, el residente deberá requerir del médico certificación escrita donde se haga constar que le fue recetado drogas narcóticas, barbitúricos, sustancias estimulantes o medicamentos de los que hizo uso mientras disfrutaba de pase o poseía al regresar de pase.

h. El residente a quien se le autorice este permiso, se abstendrá de usar bebidas alcohólicas o sustancias embriagantes.

i. Cuando ocurra cualquier inconveniente o situación adversa que puedan llevarlo a incurrir en violaciones a las condiciones de pase, deberá acudir a la institución penal más cercana, Hogar de Adaptación Social, Oficina del Programa de Libertad Bajo Palabra y Probatoria, Oficina Central de la Administración de Corrección o al Cuartel de la Policía más cercano para notificar sobre la situación y solicitar que la misma sea informada al Director del hogar. Permanecerá en ese lugar hasta tanto le sean impartidas las instrucciones cursadas por el Director o su representante autorizado. Las instrucciones cursadas para ser impartidas al residente deberán hacerse por escrito en su expediente.

j. Comparecer semanalmente a entrevistas en el hogar y rendir un informe de supervisión.

k. Deberá comparecer puntualmente cuando se le cite.

l. Deberá estar en su hogar no más tarde de las 10:00 p.m. a menos que medie justa causa, en cuyo caso deberá notificar al hogar de Adaptación Social y obtener autorización o cuando tenga permiso previo del Hogar.

m. El pase estará limitado al municipio donde resida. Cualquier salida fuera del mismo tendrá que ser autorizada previamente por el Director del hogar o su representante autorizado.

n. Cualquier otra que sea aplicable al caso en particular o que esté contenida en el Reglamento de los Hogares. Véase Memorando Normativo Núm. OAIP 92-06. ”

4. Except as provided in section 259(a) of title 42 and paragraph (2), the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.